**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA and** | ) | |
| **PEOPLE OF THE VIRGIN ISLANDS** | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 2016-0008** |
| | ) | |
| **DANIEL CARINO,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**Attorneys:**
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Michael A. Joseph, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant*

<u>**MEMORANDUM OPINION**</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Daniel Carino's "Motion for Review of Detention Order Pursuant to 18 U.S.C. § 3145(b)" (Dkt. No. 38),[1] "Supplement to Motion for Review of Detention Order Pursuant to 18 U.S.C. § 3145(b)" (Dkt. No. 41), and a second "Motion for Review of Detention Order Pursuant to 18 U.S.C. § 3145(b)" (Dkt. No. 50) (collectively the "Motions"). For the reasons discussed below, the Court will deny Defendant's Motions.

---

[1] Defendant filed his Motion for Review of Detention Order Pursuant to 18 U.S.C. § 3145(b) on June 26, 2016, and then refiled the same Motion on June 29, 2016, to correct a CM/ECF filing error. (*See* Dkt. Nos. 38, 39).

## I.    BACKGROUND[2]

Defendant is charged by Information with the following seven counts: (1) Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1); (2) Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(9); (3) Using and Carrying a Firearm During a Violent Crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii); (4) Attempted Murder First Degree in violation of 14 V.I.C. §§ 922(a)(1) and 331(1); (5) Assault Third Degree in violation of 14 V.I.C. § 297(1); (6) Unauthorized Possession of a Firearm in violation of 14 V.I.C. § 2253(a); and (7) Possession of Marijuana with Intent to Distribute in violation of 21 U.S.C. § 841(a). (Dkt. No. 24).[3]

On March 17, 2016, the Government filed a "Motion to Detain Defendant Pending Trial," in which it asserted that "no condition or combination of conditions can reasonably assure the safety of the community" and requested that Defendant be detained until trial. (Dkt. No. 8 at 4). In its Motion to Detain Defendant, the Government noted that the Motion "is based on the affidavit filed in support of the complaint in this matter" and that "[t]he Government does not intend to call any witness at the detention hearing." (*Id.* at 1 (emphasis in original)). The record does not reflect any objection by Defendant to the Government's expressed intention in this regard.

At the detention hearing on March 21, 2016, the Government relied primarily on the affidavit of Jason Oakley, Special Agent with the Federal Bureau of Investigation, which was included as an exhibit to the Complaint filed in this matter on March 14, 2016 (the "Affidavit").

---

[2] The Court bases the background factual discussion on the record established at the detention hearing, before the Magistrate Judge and on the filings before the Court. The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant is presumed innocent until proven guilty. The facts discussed herein are alleged; they are not conceded or proven beyond a reasonable doubt to the factfinder.

[3] Defendant was initially charged by Criminal Complaint with the same seven counts that are now contained in the Information. (*See* Dkt. No. 1). The Information was filed on April 21, 2016, after Defendant's detention hearing. (*See* Dkt. No. 15).

The Affidavit alleges that on December 19, 2015, at around 6:30 p.m., Virgin Islands police officers responded and located a shooting victim in a pickup truck that had stopped on Queen Mary Highway near the entrance to Villa Morales Restaurant. (Dkt. No. 1-1 at 3-4). The victim "had been shot multiple times and was lying on the ground outside of the vehicle." (*Id.* at 3). After being transported to the hospital, the victim was interviewed by police officers about the incident. (*Id.*). He told police that, while he was unloading garbage at the dumpsite in Estate Concordia, a gray Dodge Ram pickup truck drove up and blocked in the victim's vehicle. (*Id.*). The victim reported that a Hispanic male exited the Dodge pickup, approached the victim, and inquired why he had not paid the man's brother. (*Id.*). When the victim ignored the question, "the man pulled out a gun and shot [the victim] in the chest." (*Id.*). A struggle ensued and the victim was shot twice more before successfully taking the gun away from the man. (*Id.*). The man fled the dumpsite in his Dodge pickup, and the victim took the gun and "attempted to drive for help with the assistance of his minor child," who had accompanied the victim to the dumpsite. (*Id.* at 4). However, the victim lost consciousness and his vehicle came to a stop on Queen Mary Highway, where the police found him. (*Id.*).[4]

The victim did not know the name of the man who shot him, but he was familiar with him; was able to describe his physical characteristics; and described him as being "the son of one of the Carino brothers." (*Id.*). Based on the victim's description of the man, a police officer believed that the shooter was Defendant. (*Id.*). Consequently, the police prepared a photo array containing a known photograph of Defendant and five other males. (*Id.*). When presented with the photo array,

---

[4] At the detention hearing, the Government also admitted a Supplemental Report prepared by the Government's case agent, Officer Ellery Quailey. Although there are some details in the Affidavit that do not appear in the Supplemental Report and vice-versa, in all material respects the account of the incident is essentially the same in the Supplemental Report and the Affidavit.

the victim took off his oxygen mask and said, "That's him, that's him," indicating the photograph of Defendant. (*Id.*).

Around 10:30 p.m. on December 19, 2015 (the same day the victim was shot), police officers located and detained Defendant at the Chicken Shack in La Reine. (*Id.*). Defendant was found to be in possession of ten plastic vials of marijuana and approximately $890.00 in cash. (*Id.* at 4-5).

The records of the Virgin Islands Bureau of Motor Vehicles reveal that Defendant was the registered owner of a silver 2001 Dodge Ram truck. (*Id.* at 5). Additionally, certified copies of relevant records obtained by Special Agent Oakley from the Superior Court of the Virgin Islands indicate that, on June 8, 2007, Defendant was sentenced to a six-month suspended sentence for Contempt of Court/Domestic Violence, and on January 18, 2008, Defendant was sentenced to seven years of incarceration for Robbery in the First Degree. (*Id.*).

At the detention hearing, Defendant called Edwardo Carino as a witness. Mr. Carino testified that he is Defendant's first cousin and has known him all of his life. Mr. Carino also stated that he had previously served as a third-party custodian for Defendant in connection with Defendant's 2007 arrest and conviction for robbery, and that Defendant had complied with all requirements of his bail order. Mr. Carino further testified that he was willing to serve as third-party custodian for Defendant in connection with the current matter and that he would allow Defendant to live with him.[5]

---

[5] At the detention hearing, Defendant also admitted the first page of a Probable Cause Fact Sheet drafted by Officer Ellery Quailey (Defendant's Exhibit A). Defendant asserts that Exhibit A shows that the gun found in the victim's car was licensed to the victim's spouse. However, as the Government noted at the detention hearing, Exhibit A actually states that the vehicle in which the police found the victim had the "license number TCN-248" and that "TCN-248 is registered to [the victim's] spouse." Thus, Exhibit A shows that the victim's spouse was the licensed owner of the *car* in which the victim was found. It provides no support for Defendant's contention that the victim's spouse was the licensed owner of the gun that was recovered from the car.

In his "Order of Detention" issued on March 21, 2016, the Magistrate Judge found that "no conditions exist, at this time, that would reasonably ensure the safety of any other person and the community" and granted the Government's Motion for Detention. (Dkt. No. 15 at 3).

In the instant Motions, Defendant argues that the Government failed to meet its burden at the detention of hearing to show that he must be detained pursuant to the Bail Reform Act. (Dkt. No. 39 at 1-2). In particular, Defendant focuses on the fact that the Government relied on the Affidavit, which—Defendant argues—was "scripted for purpose of this litigation by an available, but non-testifying, prosecution agent." (Dkt. No. 41 at 1). Defendant asserts that by relying on the Affidavit and not presenting any live witness, the Government precluded Defendant's counsel from conducting any cross-examination and, therefore, "there was no opportunity whatsoever to extract favorable evidence which may have prevented entry of the Detention Order." (Dkt. No. 39 at 2).

In the "Government's Response to Motions for Review of Detention Order," the Government argues that it is not required to call any live witnesses during a detention hearing and that "defendants have no right to cross-examine adverse witnesses who have not been called to testify." (Dkt. No. 52 at 8-9).

## II.   PRETRIAL DETENTION STANDARD

Under the Bail Reform Act, 18 U.S.C. §§ 3141-3156, pretrial detention of a criminal defendant will be ordered only if, after a hearing upon motion by the Government, "a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making its determination of whether any conditions of release can reasonably assure a defendant's appearance and the safety of others, the Court must consider the factors set forth in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

"To justify pretrial detention, the [G]overnment must establish risk of flight by a preponderance of the evidence, and dangerousness by clear and convincing evidence." *United States v. Kanawati*, 2008 WL 1969964, at *2 (D.V.I. May 5, 2008) (citing, *e.g.*, *United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986) and *United States v. Traitz*, 807 F.2d 322, 324 (3d Cir. 1986)).[6] However, under 18 U.S.C. § 3142(e), "subject to rebuttal by the person, it shall be presumed" that no condition or combination of conditions exists that can reasonably assure a

---

[6] Several cases in this District have noted that the "[r]isk of flight and danger to the community are 'distinct statutory sources of authority to detain,' and proof of one ground for detaining a defendant 'is quite enough,' making any discussion of the other ground 'irrelevant.'" *Kanawati*, 2008 WL 1969964, at *2 (quoting *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985)); *accord United States v. Richardson*, 2009 WL 2044616, at *3 (D.V.I. July 9, 2009); *United States v. Peterson*, 2009 WL 1514402, at *3 (D.V.I. May 29, 2009); *United States v. Tyson*, 2008 WL 4415298, at *2 (D.V.I. Sept. 23, 2008); *United States v. Alexander*, 2007 WL 3391417, at *2 (D.V.I. Oct. 26, 2007); *see also United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988); *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985); *United States v. Cole*, 715 F. Supp. 677, 679-80 (E.D. Pa. 1988); *United States v. Kouyoumdjian*, 601 F. Supp. 1506, 1508-10 (C.D. Cal. 1985).

defendant's appearance and the safety of others where there is "probable cause to believe that the person committed [*inter alia*] . . . an offense under [18 U.S.C. §] 924(c)." 18 U.S.C. § 3142(e)(3)(B). Thus, once the presumption under 18 U.S.C. § 3142(e) arises, "the burden shifts to [the defendant] to produce some credible evidence that he will appear and will not present a threat to the community." *United States v. Oliver*, 2016 U.S. Dist. LEXIS 58745, at *16 (W.D. Pa. May 3, 2016) (citing *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986)); *see also United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness."). If a defendant presents sufficient evidence to rebut the presumption under 18 U.S.C. § 3142(e), then "the burden of persuasion remains on the government." *United States v. Cirillo*, 1999 U.S. App. LEXIS 28049, at *5 n.1 (3d Cir. July 13, 1999).

In *United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985), the Third Circuit determined that 18 U.S.C. § 3145(b) contemplates a *de novo* review by the district court of the issues raised in an objection to a magistrate judge's detention order. *Id.* at 1394; *see also United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release."). Nevertheless, the reasons articulated by the magistrate judge for or against detention must be given "respectful consideration." *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986) (quoting *Delker*, 757 F.2d at 1400). The district court may make its independent determination based solely on the evidence introduced at the hearing before the magistrate judge. *Delker*, 757 F.2d at 1395. Alternatively, the reviewing court has the discretion to conduct an evidentiary hearing to aid in its *de novo* review, although it is not required to do so. *Kanawati*, 2008 WL 1969964, at *2 (citing cases).

### III.   ANALYSIS

The Court will first examine Defendant's threshold arguments and then move to the merits of this matter. Based on the evidence presented at the March 21, 2016, detention hearing before the Magistrate Judge, the Court concludes that Defendant's Motions should be denied.

### A.   Defendant's Threshold Arguments

Defendant's main legal argument is that the Government failed to put forth sufficient evidence to meet its burden to detain Defendant pending trial because it relied solely on the Affidavit of the FBI Special Agent. (Dkt. No. 39 at 2).[7] Defendant argues that by relying on the Affidavit, "the Government presented exclusively hearsay evidence via a document prepared for purposes of this litigation" and in so doing precluded Defendant from engaging in any cross-examination. (*Id.*). Defendant asserts that the lack of opportunity to engage in cross-examination was improper as "a [detention] hearing in which minimal cross-examination is impossible cannot

---

[7] Defendant makes two additional legal arguments, both of which the Court finds to be meritless. First, Defendant takes issue with the fact that the Affidavit the Government relied upon in the detention hearing was likewise relied upon in Defendant's preliminary hearing. (Dkt. No. 39 at 3; Dkt. No. 41 at 1-2). Defendant argues that the "probable cause to bind a person for trial requires a stricter standard of proof than that for an arrest." (Dkt. No. 41 at 2). Even if so, the fact that the Affidavit met the lower burden does not mean that it could not also be sufficient to meet the higher burden.

Second, Defendant asserts that when he was initially brought before the Virgin Islands Superior Court on the same alleged criminal conduct at issue in the present case, the Superior Court "applied the factors of 18 U.S.C. § 3142 (Bail Reform Act) in assessing Defendant's danger to the community and had fashioned a set of release conditions." (Dkt. No 39 at 3; *see also* Dkt No. 50 at 1-2). From this, Defendant argues—without citing any legal authority—that this Court should release Defendant because "judicial comity seems appropriate." (Dkt. No 39 at 3; *see also* Dkt No. 50). The Court rejects Defendant's barebones contention that comity is appropriate here. As the Government notes in its Response, "this [C]ourt has exclusive jurisdiction over the federal offenses for which Defendant is charged[,] . . .   [which] were not before the Superior Court." (Dkt. No. 52 at 13). Moreover, while the Bail Reform Act may have guided the Superior Court in formulating release conditions, it was inapplicable to any possible detention of Defendant. *Tobal v. People of Virgin Islands*, 2009 WL 357975, at *5 n.3 (V.I. Feb. 11, 2009) (noting that "the [Superior Court] may not apply the [Bail Reform Act's] *detention* provisions for Virgin Islands defendants charged with offenses in local courts") (emphasis in original). Thus, comity is inapplicable here.

be truly adversarial." (Dkt. No. 53 at 1). Under the circumstances here, the Court disagrees that proceeding solely by affidavit rendered the Government's case for detention insufficient.

The requirements of a detention hearing are set forth in 18 U.S.C. § 3142(f) and state in relevant part:

> At the hearing, the person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed. The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to [§ 3142](e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.

18 U.S.C. § 3142(f).

The plain text of § 3142(f) cuts against Defendant's position. First, Defendant's contention that the Government presented "exclusively hearsay evidence" (Dkt. No. 39 at 2) is of little import as the statute provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." § 3142(f). Indeed, Defendant notes the same in his Reply: "[t]he [Government's] response argues a conceded issue— hearsay is admissible in detention and preliminary hearings." (Dkt. No. 53 at 1). Second, although Defendant is entitled to "cross-examine witnesses who appear at the hearing," there is no requirement in the statute that the Government must present live testimony. § 3142(f). In sum, nothing in the text of § 3142(f) directly supports Defendant's legal argument that reliance on the Affidavit was necessarily insufficient.[8]

---

[8] The Court notes that Defendant does not take issue with the other requirements of § 3142(f)— specifically, that he be represented by counsel and afforded an opportunity to testify, to present witnesses, and to present information by proffer or otherwise.

Case law interpreting the requirements of detention hearings under 18 U.S.C. § 3142 also runs counter to Defendant's position. "It is well settled that at a detention hearing the government may proceed by proffer, that hearsay testimony may be used, and that the Court has discretion whether to require direct witness testimony." *United States v. Muse*, 2014 WL 495121, at *1 (D.N.J. Feb. 6, 2014) (citing *Delker*, 757 F.2d at 1395); *see also Delker*, 757 F.2d at 1396 (noting that "Congress warned that bail hearings should not become mini-trials"); *United States v. Wrensford*, 2012 WL 6028628, at *4 (D.V.I. Dec. 4, 2012) (affirming a detention order and stating that "[t]he weight of evidence factor may be satisfied by reliance on an affidavit"); *United States v. Flanders*, 2010 WL 4054442, at *6 (D.V.I. Oct. 15, 2010) (affirming the detention order and noting that "it was proper to proceed on the Government's detention motion by proffer"); *United States v. Schenberger*, 498 F. Supp. 2d 738, 739 n.2 (D.N.J. 2007) (ordering the defendant detained pending trial and noting that "[a]s was its right[,] the government proceeded by proffer at the detention hearing").

In this regard, the Court finds the case of *United States v. Accetturo*, 783 F.2d 382 (3d Cir. 1986) to be particularly instructive. In *Accetturo*, the Government presented evidence at the detention hearing through the testimony of an FBI agent, who recounted the sworn testimony of a key government witness. *Id.* at 384-85. The defendants challenged the reliability of the key government witness by proffering evidence that he was a drug addict with a history of psychiatric disorders and requested that he be produced at the detention hearing for cross-examination. *Id.* at 388. The district court refused to compel the key government witness to testify, and this decision was upheld by the Third Circuit on appeal. *Id.* While acknowledging that reliance on hearsay evidence is not always appropriate, the Third Circuit noted that "[t]here was no reason to believe [that the government witness] would give evidence favorable to appellants or would retract information harmful to them." *Id.* The Third Circuit went on to note the following:

> [T]he magistrate or judge possesses adequate power to reconcile the competing demands of speed and of reliability, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question. Through sensible exercise of this power of selection, the judicial officer can make meaningful the defendant's right to cross-examine without unnecessarily transforming the bail hearing into a full-fledged trial or defendant's discovery expedition.

*Id.* at 389 (quoting *United States v. Acevedo-Ramos*, 755 F.2d 203, 207–08 (1st Cir. 1985)) (quotations omitted); *cf. Muse*, 2014 WL 495121, at *1 ("the Court has discretion to decline to accept proffered evidence and to require the government to produce a witness to testify").

As in *Accetturo*, the Court finds that the Magistrate Judge committed no error in allowing the Government to rely on the Affidavit rather than calling a live witness because there is "no reason to believe [that the Government's witnesses] would give evidence favorable to [Defendant] or would retract information harmful to [him]." 783 F.2d at 388. At the detention hearing, Defendant failed to introduce or even proffer any evidence that challenged the substance of the Government's version of events as presented in the Affidavit. Although the Government made clear in its Motion to Detain that it did not intend to present any live witness at the detention hearing (Dkt. No. 8 at 1), Defendant points to no instance—and the Court is aware of none—in which Defendant requested that the affiant or another government witness testify.

Defendant now asserts in the context of his Motions that if he "had [the] opportunity to cross at minimum the investigating officer, the evidence would have revealed" that "the alleged victim did not call 911[,] . . . . had an illegal firearm in his possession [and] made a **left** turn off the dumpsite road, but the Police Headquarters was almost equidistant to the **right**." (Dkt. No. 39 at 6 (emphasis in original)). Additionally, Defendant asserts that cross-examination would have revealed that "exactly forty feet in front of the dumpsite road turnoff is Amigo's Service Station where phones and other help were available." (*Id.*). According to Defendant, these facts raise questions as to "who is really the victim in this case." (*Id.*).

11

Even assuming that cross-examination would have borne out the facts alleged by Defendant, such evidence would not have warranted a different conclusion regarding Defendant's detention. That the victim allegedly did not call 911, make a right turn out of the dumpsite toward police headquarters, or drive toward a nearby service station does not seem particularly significant in a context where the victim allegedly was shot multiple times from close range, including once in the chest, and was so injured that he allegedly had to be driving with the assistance of his minor child and ultimately lost consciousness while on the road. Similarly, that the victim allegedly possessed an illegal firearm does not negate the harm suffered by the victim, allegedly at the hands of Defendant.[9]

More importantly, Defendant's assertions do not bear directly on critical aspects of the Affidavit's account of the events, such as: that Defendant shot the victim multiple times; the victim's subsequent identification of Defendant; or Defendant's possession of marijuana and approximately $890 in cash. In other words, Defendant has proffered no evidence showing that cross-examination would have revealed evidence supporting a finding that Defendant is not a flight risk or a danger to the community. Thus, even if the Court had refused to compel a live witness or the Magistrate Judge had denied Defendant's request to compel such a witness, such refusals would not have been in error. *See Accetturo* 783 F.2d at 388; *see also United States v. Joost*, 1994 WL 667011, at *4 (1st Cir. Nov. 30, 1994) (unpublished) (affirming district court's refusal to compel government witness to testify at the detention hearing because the defendant's reasons "for calling the [witnesses] prove[d] insubstantial" in that the defendant's proffer "ha[d] no bearing on the various charges contained in the [government] affidavit . . . that undergird the finding of dangerousness"); *cf. Delker*, 757 F.2d at 1398-99 (affirming the district court's refusal "to

---

[9] The Court further notes that the victim's alleged possession of an illegal firearm is consistent with the Government's version of events in which the victim allegedly took Defendant's gun from him after being shot. (Dkt. No. 1-1 at 3-4).

subpoena witnesses whose out-of-court statements linked [the defendant] to the conspiracy and other crimes" but noting that "[w]e do not address the issue whether a defendant may have a right to confront non-appearing government witnesses when the defendant can make a specific proffer to the court of how the witness' testimony will negate the government's contention that the defendant is a danger to the community, or will rebut a presumption created by the statute that the defendant should be detained"); *Muse*, 2014 WL 495121, at *2 (holding that the Government must present live witness during the detention hearing where the defendant directly disavowed inculpatory statements that the Government's affidavit attributed to the defendant).

In sum, the Court rejects Defendant's argument that the Court erred in allowing the detention hearing to proceed without the testimony of a live Government witness under the circumstances here.

### B. Presumption of Detention

Having rejected Defendant's threshold arguments, the Court now takes a *de novo* review of the evidence presented at the detention hearing and determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). As noted above, under 18 U.S.C. § 3142(e), there is a rebuttable presumption that no condition or combination of conditions exists that can reasonably assure a defendant's appearance and the safety of others where there is "probable cause to believe that the person committed [*inter alia*] . . . an offense under [18 U.S.C. §] 924(c)." 18 U.S.C. § 3142(e)(3)(B).

The Court finds that there is probable cause to believe that Defendant committed an offense under 18 U.S.C. § 924(c) and, therefore, the rebuttable presumption under 18 U.S.C. § 3142(e) applies. It is well-established that an "indictment is sufficient to support a finding of probable cause" necessary for the rebuttable presumption under § 3142(e) to arise. *Suppa*, 799 F.2d at 119.

In the Virgin Islands, the same result obtains with the filing of an information because an information "is the *full equivalent* of the presentment of an indictment by a grand jury." *Flanders*, 2010 WL 4054442, at *6 (quoting *Rivera v. Government of Virgin Islands*, 375 F.2d 988, 990 (3d Cir. 1967)) (emphasis in original).

Count 3 of the Information (Using and Carrying a Firearm During a Violent Crime) charges that Defendant violated 18 U.S.C. § 924(c)(1)(A)(iii) when he carried and discharged a 9mm pistol during the attempted murder of the victim. (Dkt. No. 24 at 2). The filing of the Information in the current matter is sufficient to support the finding of probable cause as to Count 3, which is an offense that triggers the rebuttable presumption under § 3142(e)(3). *Flanders*, 2010 WL 4054442, at *7 (noting that an information in the Virgin Islands is equivalent to an indictment and holding that "in the Virgin Islands, an information similarly supports a finding of probable cause to trigger the rebuttable presumption [under § 3142(e)]").

The Court now examines whether Defendant rebutted the presumption under § 3142(e) by "produc[ing] some credible evidence that he will appear and will not present a threat to the community." *Oliver*, 2016 U.S. Dist. LEXIS 58745, at *16. As noted above, at the detention hearing Defendant presented the testimony of Mr. Carino. Mr. Carino's testimony supports the position that Defendant has family and community ties, did not violate his previous bail order, and would have a third-party custodian and place to live if he was released. This evidence is insufficient, however, to rebut the presumption that there is no condition or combination of condition that will reasonably assure the safety of the community.

In so holding, the Court finds that the current circumstances are analogous to those the Third Circuit examined in *United States v. Perry*. In *Perry*, the Third Circuit reversed the district court's decision setting bail and remanded the case for the entry of a detention order. 788 F.2d at 118. Although the defendant in *Perry* "testified about his ties to the community, the fact that he

14

was out on bail from state court charges and had not fled, his education, and his intention to remain in Allegheny County to face all charges," the Third Circuit noted that the defendant presented no evidence regarding his dangerousness to the community. *Id.* at 107-08. After finding that the presumption of dangerousness under § 3142(e) applied, but that "there [was] no evidence in the record overcoming that presumption" the Third Circuit reversed the district court's order setting bail. *Id.* at 108, 118.

Similar to *Perry*, Defendant here put forth evidence regarding his ties to family and the community and his compliance with his previous bail order, but failed to put forth any evidence rebutting the statutory presumption that he is a danger to the community. Because Defendant has failed to "come forward with some evidence of lack of dangerousness," he failed to rebut the presumption under § 3142(e). *Id.* at 115; *see also Oliver*, 2016 U.S. Dist. LEXIS 58745, at *29-30, *34 (holding that "[d]efendant has not met his burden to rebut the applicable presumption of detention" as to flight or danger to the community even though the defendant presented testimony that he complied with his state-imposed bail order and voluntarily surrendered to federal authorities); *cf. Carbone*, 793 F.2d at 561 (holding that the defendant successfully rebutted the presumption of dangerousness where the evidence showed that defendant was a first-time offender, had an offer of steady employment, a place to live, and that members of his community "posted

one million dollars in [residential] property as surety").[10] In view of Defendant's failure to rebut the presumption, detention is appropriate under the circumstances.[11]

### C.  18 U.S.C. § 3142(g) Factors

Alternatively, even if the presumption under § 3142(e) does not apply or Defendant successfully rebutted the presumption, the Court finds that the Government has met its burden of persuasion regarding Defendant's threat to the community and risk of flight. An analysis of the applicable factors set forth in 18 U.S.C. § 3142(g) confirms the Court's conclusion in this regard.

### 1.  Nature and Circumstances of the Offenses Charged

Defendant is charged with extremely serious crimes, including the attempted premeditated murder of another human being; several felony firearms charges, including using a firearm during a crime of violence; and possession of marijuana with intent to distribute. In addition to the serious nature of the charges, the manner in which Defendant allegedly shot the victim—in the chest at close range—is particularly violent, and the fact that the shooting incident allegedly occurred in a public area in the presence of the victim's minor child serves only to compound the seriousness of the crimes charged. (Dkt. No. 1-1 at 3). *See, e.g.*, *Wrensford*, 2012 WL 6028628, at *4 (holding that the nature and circumstances of premeditated murder and several felony firearms charges that

---

[10] In *Carbone*, the Third Circuit noted the following: "Although posting a property bond normally goes to the question of defendant's appearance at trial, where the surety takes the form of residential property posted by community members the act of placing this surety is a strong indication that the private sureties are also vouching for defendant's character. Although character evidence is normally presented by oral testimony, proffered evidence of this activity—community members who know the defendant mortgage their homes to secure his release—is at least equivalent to oral character evidence." 793 F.2d at 561. The current circumstances are distinguishable in that Defendant presented no evidence indicating that his family or friends would be willing post their residential property as surety.

[11] Given the Court's conclusion that Defendant failed to rebut the statutory presumption of dangerousness under § 3142(e), it is unnecessary to determine whether Defendant rebutted the statutory presumption regarding risk of flight. *See supra* footnote 6.

took place in populated area "raise substantial concerns about the safety of the community if the [d]efendants are not detained prior to trial"); *Flanders*, 2010 WL 4054442, at *8 (holding that crime charged—murder—is a crime of violence, and was carried out with a firearm, with brutality, in the vicinity of a school, which militates in favor of detention); *United States v. Thomas*, 2009 WL 2996532, at *4 (D.V.I. Sept. 16, 2009) (stating that "users of firearms in commission of crimes of violence are dangerous in a very real sense" and holding that pre-trial detention was warranted); *United States v. Carey*, 578 F. Supp. 2d 190, 192 (D. Me. 2008) (noting that the nature of firearm offenses weighs against release). Further adding to the dangerousness and seriousness of Defendant's conduct is that, on the same day of the shooting incident, Defendant was allegedly carrying ten vials of marijuana and a large amount of cash consistent with drug distribution. *See United States v. Morales*, 2011 WL 3651355, at *3 (E.D. Tex. Aug. 19, 2011) ("The very nature of drug offenses constitutes a danger to the community which may justify pretrial detention"). Thus, the nature and circumstances of the offenses weigh strongly in favor of detaining Defendant prior to trial. Accordingly, the Court finds that this factor weighs in favor of detention.

### 2.  Weight of the Evidence

The Affidavit demonstrates that the Government appears to have a considerable amount of evidence against Defendant. Notably, the victim allegedly came "face to face" with Defendant during the shooting incident; the victim "was familiar with [Defendant]" even though he did not know his name; and the victim accurately identified Defendant in a photo array after describing Defendant's physical characteristics. (Dkt. No. 1-1 at 3-4). Additionally, the victim's description of the vehicle Defendant was driving at the time of the shooting (a gray Dodge Ram pickup) was corroborated by the records of the Bureau of Motor Vehicles, which indicate that "[Defendant] is the registered owner of a silver 2001 Dodge Ram truck." (*Id.* at 5). Finally, when Defendant was detained the night of the shooting at Chicken Shack, he "was found to be in possession of ten (10)

plastic vials" of marijuana and almost $900 dollars in cash—strong evidence that Defendant was distributing drugs. In sum, the Affidavit shows that, at this juncture, the evidence against Defendant is substantial and, accordingly, this factor also weighs in favor of detention. *See, e.g.*, *Flanders*, 2010 WL 4054442, at * 8 (opining that where weight of evidence against defendant is substantial, that fact militates in favor of detention); *Kanawati*, 2008 WL 1969964, at *3 (same).[12]

### 3.  History and Characteristics of the Defendant

Defendant provided evidence of community and family ties at the detention hearing. His first cousin, Edwardo Carino, testified that he has known Defendant all his life and indicated that Defendant is a long-term resident of St. Croix. Mr. Carino also testified that he has previously served as a third-party custodian for Defendant and that Defendant did not violate any of the requirements of his bail order. Mr. Carino noted that he was again willing to serve as a third-party custodian for Defendant in connection with the instant case and that he was willing to let Defendant live with him. Defendant's uncontested ties to the community and to family are factors that would weigh against detention. *See Wrensford* 2012 WL 6028628, at *4 (family and community ties contributed to the conclusion that the history and characteristics factor weighed against detention).

On the other hand, the Affidavit notes that Defendant has a troubling criminal history. Specifically, on January 18, 2008, Defendant was sentenced to seven years of incarceration for

---

[12] As noted above, Defendant alleges various facts that—according to Defendant—call into question who the real victim is (*e.g.* that the victim did not call 911 after he was shot, did not drive to the nearest police station, and did not stop at a nearby service station). (*See* Dkt. No. 39 at 6). Even accepting these allegations as true, the alleged failure to take such actions moments after the incident is not so unreasonable or suspicious as to cast any meaningful doubt on the Government's version of events or negate the collective weight of the Government's evidence. This is especially so in view of the fact that the victim was allegedly shot multiple times from close range, including once in the chest; was injured to the point that he allegedly had to be driving away from the scene of the incident with the assistance of his minor child; and was so injured that he allegedly lost consciousness and his vehicle came to a stop on Queen Mary Highway where he was found by police. Thus, even taking Defendant's allegations as true, the Court still concludes that the weight of the evidence factor favors detention.

Robbery in the First Degree, and in June of 2007, Defendant was sentenced to six months of incarceration, which was suspended, for "Contempt of Court/Domestic Violence." (Dkt. No. 1-1 at 5). Especially considering the serious, violent and premeditated nature of the attempted murder offense, together with the firearms and drug distribution offenses, and the fact that the offenses occurred relatively soon after the conclusion of Defendant's seven-year sentence of imprisonment for First Degree Robbery, Defendant's criminal history weighs strongly in favor of detention. *See Flanders*, 2010 WL 4054442, at *6 (noting that the defendant's charges of aggravated assault and battery and domestic violence that were pending at the time of the alleged offense weighed in favor of finding that there was clear and convincing evidence that the defendant presented a danger to the community).

In sum, Defendant has demonstrated family and community ties and a history of compliance with his prior bail order, but also has a troubling criminal history. In its totality, the Court finds that this factor weighs in favor of detention. *See United States v. Thomas*, 2016 WL 890583, at *8-10 (W.D. Pa. Mar. 9, 2016) (finding that the history and characteristics factor weighed in favor of detention based on the defendant's significant criminal history, even though the defendant was "a lifelong resident of Western Pennsylvania," who had six children residing close by, and was living with a cousin); *see also United States v. Garcia*, 2007 WL 2825724, at *4 (E.D. Pa. Sept. 20, 2007) ("The United States Court of Appeals for the Third Circuit has found community ties to be 'of limited weight' in the context of a case where other factors weigh heavily in favor of pretrial detention.") (quoting *Delker*, 757 F.2d at 1396).

### 4.   Nature and Seriousness of the Danger to Any Person or the Community

The Court finds that under the particular circumstances in this case—in which the victim may likely be a key government witness—the nature and seriousness of danger to the victim alone strongly favors detention. *See Wrensford* 2012 WL 6028628, at *5-6 (finding that the nature and

seriousness of the danger to any person or the community factor weighed in favor of detention in part because a particular individual who was known by the defendants "may likely be a Government witness and could be at risk of harm should the [d]efendants be released prior to trial"). In addition, the Court finds that the manner in which Defendant allegedly shot the victim—in a public area in the presence of a minor child, without provocation, in an apparent attempt to obtain a payment of money—demonstrates Defendant's dangerousness to the community generally. *See United States v. Allen*, 409 F. Supp. 2d 622, 632 (D. Md. 2006) (finding that the underlying facts of the defendant's arrest "lucidly portray the defendant's serious dangerousness" where the defendant was pointing a gun at the head of a person kneeling on the ground). Accordingly, the Court finds that this factor weighs heavily in favor of detention.

### D. 18 U.S.C. § 3142(e) Analysis

#### 1. Safety of the Community

Assessing the four factors under 18 U.S.C. § 3142(g), the Court finds that the Government has established, by clear and convincing evidence, that "no condition or combination of conditions will reasonably assure the . . . safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Notwithstanding Defendant's family and community ties and compliance with his previous bail order, which are arguments in favor of Defendant's release, the Court finds that the circumstances as a whole strongly favor detention. *Alexander*, 2007 WL 3391417, at *3 (ruling that strong family ties are not dispositive in firearms case, given other relevant factors); *see also Thomas*, 2016 WL 890583, at *8-10; *Garcia*, 2007 WL 2825724, at *4. Notably, the Court has found that all four factors—the nature and circumstances of the offense charged, the weight of the evidence, the history and characteristics of Defendant, and the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release—weigh in favor of detention. The Court therefore agrees with the Order of Detention in which the Magistrate Judge

found that "no conditions exist, at this time, that would reasonably ensure the safety of any other person and the community." (Dkt. No. 15 at 3).

### 2. Risk of Flight

Even assuming that a risk of flight analysis is necessary—notwithstanding the Court's conclusions above that Defendant failed to rebut the statutory presumption of dangerousness *and* that the Government has made the necessary showing of dangerousness—the Court also finds that the Government has shown by a preponderance of the evidence that Defendant poses a risk of flight because of the serious nature of the offenses with which he is charged and the severity of the penalties he faces if convicted.

Defendant is charged with seven counts, including attempted first degree murder (Count 4) which carries a maximum sentence of 25 years, 14 V.I.C. § 331(1); possession of marijuana with intent to distribute (Count 7), which carries a maximum sentence of five years, 21 U.S.C. § 841(b)(1)(D); and using a firearm during a violent crime (Count 3), which carries a mandatory minimum sentence of 10 years that must run consecutively to "any other term of imprisonment imposed," 18 U.S.C. § 924(c)(1)(A)(iii), (c)(1)(D)(ii). The severity of these sentences, if Defendant is convicted, provides an incentive for Defendant not to appear at trial. *See Thomas*, 2009 WL 2996532, at *3 ("Although [the] [d]efendants have ties to the jurisdiction and have offered third-party custodians, the Court takes into consideration the fact that [the] [d]efendants face a significant period of incarceration if convicted. Community ties and third party custody is not sufficient to assure [the] [d]efendants' appearance for trial. . . .") (citing cases); *United States v. Stein*, 2005 WL 3071272, at *7 (S.D.N.Y. Nov. 15, 2005) ("[T]he defendant has a substantial motive to flee given the severity of the sentence he may face in the event of conviction."); *United States v. Caraballo*, 47 F. Supp. 2d 190, 192 (D.P.R. 1999) (noting that "defendant is a 'risk of flight' because defendant potentially faces a life sentence and the risk of flight increases as the

21

severity of [the] potential sentence increases"). The serious nature of the offenses charged and the severity of the sentences, if convicted, provide ample support for concluding that Defendant poses a risk of flight.

In sum, the Government has proved, by a preponderance of the evidence, that "no condition or combination of conditions will reasonably assure the appearance of [Defendant] as required," pursuant to 18 U.S.C. § 3142(e)(1). Mr. Carino's testimony during the detention hearing regarding his past experience with Defendant and his willingness to serve as a third party custodian for Defendant does not alter the Court's conclusion in this regard. Accordingly, the Court finds that the circumstances here warrant Defendant's detention under the Bail Reform Act.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds, based on its *de novo* review, that the Government has made the requisite showing to support the Magistrate Judge's finding that "no conditions exist, at this time, that would reasonably ensure the safety of the community." (Dkt. No. 15 at 3). The Court also finds that the Government has made the requisite showing to establish that "no condition or combination of conditions will reasonably assure the appearance of [Defendant] as required." 18 U.S.C. § 3142(e)(1). Accordingly, the Court will deny Defendant's "Motion for Review of Detention Order Pursuant to 18 U.S.C. § 3145(b)" and associated filings. (Dkt. Nos. 38, 41, and 50).

An appropriate Order accompanies this Memorandum Opinion.

Date: October 13, 2016

_____/s/_____
WILMA A. LEWIS
Chief Judge